S.I.R.P.R.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

Kate Angela Tabarejos Vokoviak,

Plaintiff,

v.

Litehouse Foods, Inc.,

Defendant.

FILED - GR
June 26, 2025 2:01 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW / 6-27

1:25-cv-706
Robert J. Jonker
U.S. District Judge

COMPLAINT AND DEMAND FOR JURY TRIAL

I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), as this action arises under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, and the Pregnant Workers Fairness Act.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the unlawful employment practices were committed in this district.

1

## II. PARTIES

3. Plaintiff Kate Angela Tabarejos Vokoviak is a lawful permanent resident of the United States and at all relevant times resided in Michigan.

4. Defendant Litehouse Foods, Inc. is an employer within the meaning of Title VII and PWFA and conducts business in Michigan.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) dated July 18, 2024.

6. Plaintiff received a Notice of Right to Sue from the EEOC dated March 31, 2025. This complaint is being filed within ninety (90) days of receipt of that notice. *See Exhibit A. for Right to Sue Letter From EEOC (Charge No. 471-2024-04593).*

7. Plaintiff notes that the EEOC investigator uploaded the Notice of Right to Sue on March 31, 2025, effectively closing the charge. However, immediately after this, the investigator contacted Plaintiff asking for additional proof that the reassignment was for pregnancy accommodation, not workman's compensation. Plaintiff promptly sent the requested documentation, including the employer's own written statement confirming the accommodation was pregnancy-related. Despite this, the EEOC uploaded the evidence to the portal but did not reconsider or reverse its

2

dismissal. This sequence demonstrates that the charge was closed prematurely and without full consideration of material evidence, undermining the procedural fairness of the investigation.

## IV. FACTUAL ALLEGATIONS

8. Plaintiff worked at Litehouse Foods, Inc. as a Machine Technician I since June 11, 2023. During the course of her employment, she sustained a work-related injury and was placed on workman's compensation. The employer accommodated her restrictions, including finding light duties despite transportation issues, until she became pregnant.

9. On April 18, 2024, Plaintiff informed her direct supervisor that she was pregnant and personally handed her a medical restriction note from her OB-GYN, which advised against lifting over 20 pounds. During this conversation, Plaintiff expressed concern that as her pregnancy progressed and her abdomen expanded, it would become increasingly unsafe to continue working at Cup 1, where the machines and workspace posed a risk of abdominal compression or injury. In response, the supervisor acknowledged Plaintiff's concerns and stated, "Just let me know when the time comes and we will figure something out." The supervisor then forwarded the medical restriction to the HR Manager. This exchange demonstrates the employer's early awareness of Plaintiff's pregnancy and potential need for accommodation, establishing a duty to engage in an ongoing interactive process. *Exhibit B. Medical Document regarding restriction and Plaintiff's Diary.*

10. On April 19, 2024, while working on the Cup 1 line, Plaintiff was nearly struck by a HiLo driver while backing out a pallet. The driver failed to stop or yield, causing Plaintiff to quickly move away to avoid serious injury. At the time of this incident, Plaintiff was visibly pregnant and had previously expressed safety concerns about working on the Cup 1 line. Plaintiff reported the incident to her supervisor, who stated she would speak with the HiLo driver. However, no formal injury report was created at the time of the incident. Despite the obvious safety risk to a pregnant employee, Litehouse Foods took no immediate steps to investigate or remove Plaintiff from Cup 1. The formal injury report was only completed later—on May 20, 2024—after Plaintiff specifically requested documentation of the incident. This delay and disregard for Plaintiff's safety underscore the company's failure to address known hazards, particularly in light of Plaintiff's pregnancy. *A copy of the delayed injury report is attached as Exhibit C.*

11. On May 9, 2024, Plaintiff requested accommodation due to her pregnancy before her shift started, which was denied. She experienced severe abdominal and lower back pain while performing her duties at Cup 1. Plaintiff asked the supervisor if she could be taken to the hospital but was told, "Is this a work-related issue? If not, you have to contact the safety manager", which was not available that time. However, no formal injury report was created at the time of the incident. The formal injury report was only completed later—on May 20, 2024—after Plaintiff specifically requested documentation of the incident. This delay and disregard for Plaintiff's safety underscore the company's failure to address known hazards, particularly in light of Plaintiff's pregnancy. *Exhibit D. Incident Report, Emails and text messages.*

12. On May 10, 2024, Plaintiff called in sick due to ongoing abdominal pain. Benefit

4

Administrator later called her and acknowledged the need for accommodations and outlined restrictions: no lifting over 20 lbs, removal from Cup 1, and bathroom flexibility. However, implementation was inconsistent and delayed. *Exhibit E, medical record May 10, 2024.*

13. On May 16, 2024, after notifying the company CEO of her situation, Plaintiff was called into a meeting with the Benefits and Leave Administrator, followed by an unexpected conference call with multiple managers. Plaintiff was not informed in advance that this would be a group meeting, and her direct supervisor was absent without explanation. During the call, Plaintiff proposed several work areas known to accommodate restricted-duty employees (Retail 1, Retail 2, Tub line), but these suggestions were dismissed by the Plant Manager and another supervisor, who claimed no such accommodations were available. This inconsistent treatment—given that other employees with similar or greater restrictions had been accommodated—demonstrates differential treatment based on pregnancy. *Exhibit F. Plaintiff diary.*

14. On June 7, 2024, Plaintiff informed the Benefit Administrator that she was being required to do rework alone involving boxes over 45 lbs, violating her medical restrictions. *Exhibit G. Email Record.*

15. On June 25, 2024, Plaintiff spoke directly with the company's safety manager regarding her chair request to accommodate severe pregnancy-related sciatica. The safety manager responded, "If we provide you a chair, other people might start asking for one." This statement contradicts

the Benefit Administrator's claim that the chair was denied for safety reasons and reveals that the denial was based on concern about setting precedent — not legitimate safety concerns. This demonstrates a failure to provide reasonable accommodation and supports Plaintiff's claims of discrimination under the PWFA and Title VII. *Exhibit H. Plaintiff's Diary Book.*

16. On July 9, 2024, Plaintiff received a Tdap vaccine as part of her prenatal care. She was penalized for leaving early due to vaccine-related shoulder pain. Despite explaining the issue, HR confirmed she would receive attendance points and was only removed later on. *Exhibit I. Email Record.*

17. On July 23, 2024, Plaintiff was threatened by a supervisor who said he would call the police if she did not leave work as soon as possible, demonstrating hostility toward her pregnancy and accommodation requests. *Exhibit J. Plaintiff's 911 Phone Call Log.*

18. On July 24, 2024, Plaintiff submitted a formal written complaint documenting months of pregnancy-related discrimination and retaliation. On July 25, 2024, Company Investigator dismissed the complaint, stating no violations occurred. *Exhibit K. Email Record.*

19. On August 30, 2024, Plaintiff raised concerns via email to the Benefit Administrator regarding a change in the second shift break schedule that disproportionately impacted her as a pregnant employee. The change caused delays in accessing microwaves and restrooms, and

6

Plaintiff explained that due to her third-trimester sciatica and pregnancy-related leg pain, she could not move as quickly as others. Despite this, Plaintiff was singled out and reprimanded by her supervisor, for being a few minutes late. This occurred even though the delay affected many second-shift employees equally. Plaintiff emphasized that she had been approved for accommodations allowing her to sit when needed but felt targeted and unsupported during this time. Human Resources acknowledged her concerns and reiterated the list of approved accommodations, including restrictions on standing, lifting, and working hours. However, no immediate adjustment was made to address the discriminatory enforcement of policies or the structural barrier created by the shift-wide breaktime change.

20. On September 4, 2024, Plaintiff notified the Benefits Administrator via email that the alternative work assignment imposed by the Plant Manager was exacerbating her pregnancy-related pain and work injury pain. Plaintiff reported increased soreness in her upper and lower back due to repetitive movements and noted that the new assignment was not lighter than her previous tasks. Additionally, the reassigned work area was significantly farther from the nearest restroom or breakroom, making it more difficult for Plaintiff to access necessary rest and bathroom breaks, which were part of her medical restrictions. Plaintiff informed both supervisor and the machine operator she was assigned to that her back pain was worsening. Despite this report, no prompt corrective action was taken to adjust the assignment or reevaluate the accommodation's effectiveness, demonstrating the employer's failure to engage in a good-faith interactive process. *Exhibit L. Email Record.*

21. On November 6, 2024, Plaintiff submitted a formal resignation notice providing two weeks' notice. However, Defendant made her resignation effective immediately, without discussion or any attempt to explore retention or accommodation. *Exhibit M. Resignation and Email Record.*

22. After Plaintiff's resignation, Defendant appealed her approved unemployment benefits, resulting in Plaintiff being denied compensation. Plaintiff had been initially found eligible, and Defendant's appeal contributed to ongoing financial harm. This appeal further supports Plaintiff's claim of retaliation and emotional distress following her forced resignation.

23. On March 31, 2025, the EEOC investigator called Plaintiff after issuing the Notice of Right to Sue, requesting additional proof about the reassignment being pregnancy-related. Plaintiff complied, yet the EEOC maintained the closure. This supports Plaintiff's contention that the charge was dismissed without full consideration of critical evidence.

24. Defendant's written communications further demonstrates unequal treatment and a failure to provide meaningful accommodations. While other employees were offered transportation to the hospital during medical episodes, Plaintiff — a visibly pregnant employee experiencing documented pain — was told she may leave on her own to seek medical care. This unequal support contradicts Defendant's claim of good faith accommodations and constitutes a violation of the Pregnant Workers Fairness Act and Title VII.

## V. CLAIMS FOR RELIEF

**Count I: Violation of the Pregnancy Discrimination Act (Title VII, 42 U.S.C. § 2000e(k))**

25. Defendant discriminated against Plaintiff because of her pregnancy by denying and delaying reasonable accommodations that caused harm on her pregnancy, subjecting her to a hostile work environment, and attempting to penalize her for medically related absences.

**Count II: Violation of the Pregnant Workers Fairness Act (42 U.S.C. § 2000gg et seq.)**

26. Defendant failed to provide reasonable accommodations for Plaintiff's known pregnancy-related limitations, in violation of PWFA.

27. Defendant required the Plaintiff to accept an accommodation other than a reasonable accommodation arrived at through the interactive process.

28. Required the Plaintiff to take leave if another reasonable accommodation can be provided that would let her keep working.

29. Defendant engaged in retaliation against Plaintiff by using a reasonable accommodation for a known limitation under the PWFA.

## Count III: Retaliation and Retaliatory Reassignment in Violation of Title VII and the PWFA

30. Plaintiff experienced threats, coercive behavior, and retaliatory reassignment after requesting pregnancy-related accommodations and engaging in protected activities under Title VII and the PWFA.

31. On July 23, 2024, Plaintiff was threatened by a supervisor who stated he would call the police if she did not leave work early, despite her known pregnancy-related limitations and lack of transportation. This incident created a hostile and intimidating work environment that discouraged Plaintiff from asserting her legal rights.

32. On September 3, 2024, Plaintiff was singled out for being approximately 30 seconds late to mandatory group stretches and repeatedly addressed for taking slightly longer restroom and meal breaks, despite her third-trimester pregnancy and related medical limitations.

33. On September 4, 2024, Plaintiff was reassigned to the Pouch or Sachet line shortly after raising a quality and safety concern involving a coworker who had previously harassed her due to her pregnancy and light-duty status. This reassignment was not based on any accommodation request from Plaintiff.

34. Defendant claimed the reassignment was based on business needs, but it was made unilaterally without Plaintiff's input and failed to consider her medical limitations. The new duties involved repetitive motion and increased physical pain, as Plaintiff reported in follow-up emails to management.

35. The reassignment occurred in close temporal proximity to Plaintiff's protected complaint, and no adequate or timely adjustments were made despite ongoing reports of pain. This sequence of events supports a strong inference of retaliation.

36. Taken together, these acts — threats, harassment over minor tardiness, and a retaliatory reassignment — constitute a clear pattern of retaliation and hostile work environment in violation of Title VII and the PWFA.

**Count IV: Discrepancies in Employer's Position Statement and Further Evidence of Discrimination**

37. Plaintiff provides this count to highlight material discrepancies and contradictions found in Defendant's Position Statement submitted to the EEOC, which undermine the credibility of Defendant's defense and support Plaintiff's claims of discrimination, retaliation, and failure to accommodate under the PWFA and Title VII. *Exhibit N. Defendant's Position Statement.*

38. Defendant claims that accommodations were immediately provided on May 10, 2024. However, Plaintiff requested accommodations on May 9, 2024, while experiencing severe pain, and no immediate relief or alternative assignment was offered that day. This delay placed Plaintiff's health at risk and contradicts the assertion of 'prompt' accommodation.

39. Defendant also claims to have provided 'unlimited paid breaks.' In reality, Plaintiff was limited to standard break durations and monitored during her breaks by supervisors. Coworker message confirms breaks were not effective and were burdensome for Plaintiff due to the walking distance required from the production floor.

40. Defendant's claim that accommodations were consistent with policy is contradicted by unequal treatment of non-pregnant employees who were allowed to stay at work despite lacking transportation. Meanwhile, Plaintiff, a pregnant employee, was forced to leave under threat and without alternative work being arranged.

41. Defendant asserts there was no retaliation. However, Plaintiff was repeatedly singled out by the plant manager and supervisors for being slightly late to group stretches or for taking extended breaks, even though her pace was medically impacted by the late stage of pregnancy. These actions demonstrate a hostile and discriminatory environment.

42. Defendant failed to engage in a meaningful interactive process by rejecting proposed accommodations (such as a chair or task reassignment) without adequately exploring reasonable alternatives. Plaintiff's documented emails show efforts to suggest specific solutions which were dismissed.

43. Defendant's own documentation, including the phrase that Plaintiff's pay would not be adjusted 'at this time,' foreshadows punitive financial changes and contradicts their defense of nondiscrimination.

44. Defendant claims they implemented accommodations. However, under the Pregnant Workers Fairness Act, employers are required to engage in a timely, good faith interactive process and to provide reasonable accommodations without delay.

45. Defendant's failure to act until Plaintiff repeatedly requested help, submitted written complaints, or experienced harm demonstrates a lack of good faith and a failure to comply with the law.

46. A delayed response to a known medical need — especially only after Plaintiff escalated her concerns — does not cure the legal violation that already occurred.

## Count V: Constructive Discharge in Violation of Title VII and the PWFA

47. Plaintiff felt compelled to resign due to an ongoing fear of retaliation by management and supervisors. Given her recent childbirth, she believed that continuing in such a hostile environment would further harm her mental health and safety.

48. Defendant's failure to honor the two-week notice, and their lack of engagement or concern regarding Plaintiff's wellbeing, further supports the claim of constructive discharge and retaliatory intent.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that Defendant's conduct violated Plaintiff's rights under Title VII and the PWFA;

b. Award Plaintiff back pay, front pay, and compensatory damages for emotional distress;

c. Award punitive damages;

d. Award costs and reasonable attorney's fees;

e. Grant such other relief as the Court deems just and proper.

f. Plaintiff respectfully requests a court-appointed interpreter during all proceedings due to limited English proficiency, to ensure full and fair participation as required under Title VI of the Civil Rights Act of 1964.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*[signature]*

Kate Angela Tabarejos Vokoviak

1001 E Pearl St Greenville MI 48838

616-617-0788

katabarejos95@gmail.com